Filed 10/18/22  In re Trust W. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re TRUST W. et al., Persons Coming Under the Juvenile Court Law. | B318444 |
| | (Los Angeles County Super. Ct. Nos. 19CCJP01834A-B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. DANESHA B., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Jean M. Nelson, Judge. Conditionally affirmed and remanded.

Christine E. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica S. Mitchell, Senior Deputy County Counsel, for Plaintiff and Respondent.

————————————

Danesha B., the mother of now-six-year-old Trust W. and now-three-year-old Faith J., appeals the order terminating her parental rights. The single issue on appeal is whether the Los Angeles County Department of Children and Family Services' failure to fulfill its statutory duty of inquiry under the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and related California law (Welf. & Inst. Code, § 224.2) [1] constituted prejudicial error. The Department acknowledges that several extended family members, including those who were interviewed on other matters, were not asked about the children's possible Indian ancestry. Nonetheless, the Department argues, because it sent ICWA notices to two federally recognized Indian tribes prior to the jurisdiction hearing and received responses stating that neither Trust, Faith nor any of their parents was a member of, or eligible for membership in, either tribe, the omissions and any violation of its continuing duty of inquiry were necessarily harmless. [2]

————————————

[1] Statutory references are to this code unless otherwise stated.

[2] As discussed in section 1, this division has addressed at length the purpose of the mandatory and continuing duty of inquiry and held the violation of that duty is harmless only when the record affirmatively reflects the protections intended to be afforded through the exercise of that duty have been provided. (*In re Rylei S.* (2022) 81 Cal.App.5th 309, 325; *In re J.C.* (2022)

It may be that the failure to fully comply with the child protective agency's continuing duty of inquiry could be harmless if the incomplete investigation generated all the information required by federal and state law for an ICWA notice to the tribes. Here, however, because the notices omitted potentially significant information, we cannot conclude a proper inquiry would not have uncovered the missing information or even identified additional tribes that should have received notice. Accordingly, we conditionally affirm the order terminating parental rights and remand for the Department, with adequate oversight by the juvenile court, to comply with the inquiry provisions of ICWA and California law.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Petition, Detention Hearing and Prejurisdiction ICWA Inquiries*

On March 21, 2019 the Department filed a section 300 petition alleging both Danesha and Faith had tested positive for amphetamine in the hospital immediately after Faith's birth; Danesha had a history of abusing methamphetamine and alcohol; and her substance abuse made her unable to care for Faith and her then-two-year-old son, Trust (§ 300, subd. (b)). The petition

___

77 Cal.App.5th 70, 80-82.) Several courts have followed a somewhat similar approach (see *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744; see also *In re Y.M.* (2022) 82 Cal.App.5th 901, 910), while others have applied an entirely different, far more tolerant standard of prejudice (see, e.g., *In re Ezequiel G.* (2022) 81 Cal.App.5th 984; *In re Dezi C.* (2022) 79 Cal.App.5th 769). The Supreme Court has granted review in *In re Dezi C.,* September 21, 2022, S275578, and presumably will address the conflict.

also alleged Faith's biological father, Christopher J., knew of Danesha's substance abuse and failed to protect the children (§ 300, subd. (b)). Jimmie W., Trust's biological father, was not named in the petition and was not present at the detention hearing.

On March 22, 2019, the day of the detention hearing, Danesha filled out ICWA form-020 indicating she had no Indian ancestry as far as she knew. The court found Christopher to be Faith's presumed father and Jimmie to be Trust's presumed father. Neither man appeared at the hearing. The court acknowledged receiving Danesha's ICWA-020 form and asked her whether she knew if Christopher or Jimmie had Indian ancestry. Danesha replied she did not know.

Faith's paternal grandmother, Stacy B., an unidentified paternal aunt, and maternal great-grandmother Joyce G. were also present at the March 2019 detention hearing. After the court asked Danesha about Christopher's Indian ancestry, the Department's counsel asked the court to inquire of Stacy and Faith's paternal aunt if they had reason to know of "Indian ancestry on the paternal side." Directing its question to the "relatives of Christopher J.," the court asked whether they had any reason to know the family had Indian ancestry. Stacy replied her father, Faith's paternal great-grandfather, was "American Indian" and she had a copy of his death certificate identifying his tribe as the Caddo Indian Tribe of Oklahoma. Faith's paternal aunt did not respond. The court did not ask Joyce about Indian ancestry.

Finding a prima facie case for detention, the court detained the children, ordered the Department to consider Joyce and maternal grandmother Evelyn A. for possible placement and

4

directed the Department to continue to investigate the children's Indian ancestry.

On March 29, 2019 the Department interviewed Joyce at her home for possible placement. Joyce told the Department her family had possible Indian ancestry with the Tecumseh Shawnee Indian Tribe. Joyce also reported she had six children, 16 grandchildren and 20 great-grandchildren. At the Department's request, Joyce provided biographical information for maternal grandfather (Joyce's son) David B., who was incarcerated; maternal grandmother Evelyn; and maternal great-grandfather Wilbert B., who was deceased. She also stated she knew generally Faith's paternal relatives had Indian ancestry but did not have any specific information.

On March 29, 2019 the Department interviewed Joyce's sons, maternal great-uncles Wilbert B. and Robert K., who were living with Joyce. Neither man was questioned on ICWA-related matters.

On May 24, 2019 the Department interviewed Evelyn, who denied Indian ancestry on her side of the family. It does not appear Evelyn was asked for, or provided, any biographical information for any of her relatives.

2. *The Jurisdiction Hearing*

Jimmie appeared at the jurisdiction hearing on June 11, 2019 and filled out an ICWA-020 form denying knowledge of any Indian ancestry. Neither Danesha nor Christopher appeared at the hearing. The court found notice proper and sustained the substance abuse and failure-to-protect allegations and continued the disposition hearing to August 15, 2019. The court's minute order states, "The court finds Jimmie [W.] is [Trust]'s presumed

5

father and ICWA does not apply to this minor. . . . DCFS to continue to investigate ICWA issues."

### 3. *The Disposition Hearing and Notices to Tribes*

In a last minute information for the court filed August 9, 2019 for an August 15, 2019 hearing, the Department attached copies of the ICWA notices sent in July 2019 on behalf of Trust and Faith to the Department of the Interior, the Bureau of Indian Affairs and the Shawnee Tribe of Oklahoma and to the Caddo Nation of Oklahoma on behalf of Faith only.

On August 14, 2019 the Department filed a section 342 petition on behalf of Trust advising the court of an open dependency case in San Bernardino filed in April 2019, which alleged Trust was at substantial risk of serious physical harm based on Jimmie's history of domestic violence and his violent conduct directed at his pregnant girlfriend in the presence of their children (Trust's half-siblings). (§ 300, subds. (a), (b), (j).) The court ordered Trust (who had been placed with Evelyn since detention from Danesha) detained from Jimmie and set both the jurisdiction hearing on the section 342 petition and the disposition hearing on the section 300 petition for October 17, 2019. The court stated its findings as to ICWA were "pending."

In its October 11, 2019 last minute information for the court prior to the October 17, 2019 hearing, the Department reported it had received responses to its ICWA notices from the Shawnee Tribe of Oklahoma and the Caddo Nation of Oklahoma. The Department attached the tribes' responses to its report. The Shawnee Tribe ICWA representative wrote in August 2019 that, based on the "genealogical information provided" in the notice, neither Trust, Faith, nor their parents (Danesha and Jimmie for Trust; Danesha and Christopher for Faith) was a member of, or

6

eligible for membership in, the Shawnee Tribe. Similarly, a representative of the Wichita and Affiliated Tribes wrote to the Department on August 29, 2019 indicating that neither Faith nor her parents was an enrolled member nor eligible for membership in the Caddo Nation of Oklahoma. The Department stated there were no further ICWA responses pending and asked the court to make ICWA findings as to Trust and Faith at the next hearing.

On October 17, 2019 the court continued the matter to November 25, 2019 without making any ICWA findings.

On November 25, 2019 the court sustained the section 342 petition (§ 300, subds. (b), (j)) and set the disposition hearing on both petitions for January 10, 2020. Neither the court nor the Department addressed ICWA at the hearing.

The disposition hearing on both petitions was continued again (due to Danesha's incarceration) and held on March 12, 2020. As to ICWA, the Department told the court, "An ICWA finding is needed on this case." Asked by the court for information, the Department reminded the court of the information it had provided in October 2019 concerning the tribal responses to its ICWA notices and asked the court to find ICWA did not apply to either child. The Department then reported, inaccurately, "[T]he only parent who was indicating they may have ancestry was, I believe, a relative of [Christopher] who was present at [a] prior hearing. The Department did follow up and is asking that the court find that ICWA does not apply [to] either [child]." The court asked, "So the only ICWA claim was as to [Christopher]?" The Department responded, "Yes," a relative of Christopher's.

The court inquired as to Christopher's ICWA responses. The Department reminded the court that Christopher had never

7

appeared in the action, but, based on statements by paternal grandmother Stacy at the detention hearing, notices were sent to the Caddo Nation of Oklahoma. The court then asked whether it had "already ma[de] an ICWA finding as to Trust?" The Department responded the court had indicated at the detention hearing there was no reason to know Trust was an Indian child "because [Jimmie] had not appeared initially. And then once he appeared [on June 11, 2019], I don't see that the court ever made a final ICWA finding as to him." Recalling that Jimmie had denied ICWA ancestry on his ICWA-020 form, and Danesha had similarly denied ICWA ancestry on her ICWA-020 form, the court stated, "[A]s to both children I find there is no reason to know that they are Indian children within the meaning of [ICWA], and I find, as to both children, [ICWA] does not apply."[3]

4. *The Six-month Review Hearing and the Selection and Implementation Hearing Terminating Parental Rights*

After several continuances the six-month review hearing was held on December 4, 2020. The court terminated family reunification services for all parents and set a selection and implementation hearing for April 19, 2021.

In all further reports prior to the selection and implementation hearing, the Department's only reporting as to ICWA stated, "On 3/22/19, the Court did not have any reason to

---

[3]    The court's March 12, 2020 minute order states as to Trust, "The Court does not have reason to know that this is an Indian child as defined under ICWA, and does not order notice to any tribe under the BIA. Parents are to keep the Department, their Attorney and the Court aware of any new information relating to possible ICWA Status." The court made an identical ICWA finding for Faith.

8

know the children are Indian children, as defined under ICWA and did not order notice to any tribe or the BIA. The [ICWA] does not apply."

On December 3, 2021 the court denied Danesha's section 388 petition and, at the Department's request, continued the selection and implementation hearing to February 4, 2022. The court asked the Department about ICWA. The Department replied, "With regard to Trust, on June 11, 2019 [after Jimmie appeared and denied Indian ancestry] the Court made a finding that there was no reason to know that Trust was an Indian child. On March 12, 2020, the court found that ICWA does not apply in regard[] to Faith, given that [Christopher] had initially provided information that there may be ancestry, which was subsequently ruled out." No mention was made of Joyce and the information she provided (or was unable to provide) as to the Indian ancestry of both children. The court responded, "I'm not making a new finding today. I'm just confirming that for the .26 hearing, the ICWA inquiry has been completed and there is none—there is no Indian ancestry."

At the February 4, 2022 section 366.26 hearing, the court stated, "At that last hearing I confirmed that a proper [ICWA] finding was made for the children." The court terminated parental rights and freed Trust and Faith for adoption.

Danesha filed a timely appeal from the court's order terminating her parental rights.

## DISCUSSION

1. *ICWA and the Duties of Inquiry and Notice*

We have on several recent occasions addressed the purposes of ICWA and the procedural protections ICWA and California law impose before state courts may order Indian

9

children removed from their homes and placed in foster care or adoptive homes. (See *In re Rylei S.* (2022) 81 Cal.App.5th 309, 316-318; *In re J.C.* (2022) 77 Cal.App.5th 70, 77-79; *In re Antonio R.* (2022) 76 Cal.App.5th 421, 431-432.)

In brief, to ensure Indian tribes may exercise their rights in dependency proceedings as guaranteed by ICWA and related state law (see *Isaiah W.* (2016) 1 Cal.5th 1, 5), an investigation of possible Indian ancestry must be undertaken and, when appropriate, notice provided to the interested tribes. (§ 224.2, subd. (a).) The duty to inquire "begins with the initial contact" (§ 224.2, subd. (a)) and obligates the juvenile court and child protective agencies to ask all relevant involved individuals whether the child may be an Indian child. (*In re Rylei S., supra,* 81 Cal.App.5th at p. 316; § 224.2, subds. (a)-(c).)

In addition, section 224.2, subdivision (e), imposes a duty of further inquiry regarding a child's possible Indian status "[i]f the court, social worker, or probation officer has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child." (See also Cal. Rules of Court, rule 5.481(a)(4) [further inquiry must be conducted if the social worker "knows or has reason to know or believe that an Indian child is or may be involved"].) Further inquiry "'includes, but is not limited to,' interviewing, as soon as practicable, extended family members to gather the biological information required by section 224.3, subdivision (a)(5), to be included in ICWA notices, contacting the Bureau of Indian Affairs and contacting the 'tribe or tribes and any other person that may reasonably be expected to have information regarding the child's

membership, citizenship status, or eligibility.'" (*In re Rylei S., supra,* 81 Cal.App.5th at p. 317; § 224.2, subd. (e)(2).)

If those inquiries result in reason to know the child is an Indian child,[4] notice to the relevant tribes is required. (25. U.S.C. § 1912(a); Welf. & Inst. Code, § 224.3.) The governing federal regulations require ICWA notices to include, if known, the names, birthdates, birthplaces and tribal enrollment information of all direct lineal ancestors of the child. (25 C.F.R. § 23.111(d)(3) (2022).) State law mandates inclusion of "[a]ll names known of the Indian child's biological parents, grandparents, and great-grandparents or Indian custodians, including maiden, married, and former names or aliases, as well as their current and former addresses, birth dates, places of birth and death, tribal enrollment information of other direct lineal ancestors of the child, and any other identifying information, if known." (§ 224.3, subd. (a)(5)(C).)

> 2. *The Department Did Not Fulfill Its Continuing Duty of Inquiry; the ICWA Notices Sent Do Not Render the Error Harmless*

The Department acknowledges it had reason to believe from Stacy's comments at the March 22, 2019 detention hearing that Faith may have Indian ancestry on her father's side at least. And, based on maternal great-grandmother Joyce's responses on March 29, 2019, it also had reason to believe that both Trust and

---

[4] "'For purposes of ICWA, an "Indian child" is an unmarried individual under age 18 who is either a member of a federally recognized Indian tribe or is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe.'" (*In re Rylei S., supra,* 81 Cal.App.5th at p. 317, fn. 5.)

Faith may have Indian ancestry on their mother's side, despite the Department's explanation to the court in March 2020 that the "only ICWA issue" related to Faith's Indian ancestry. The Department also acknowledges, without explanation, that it did not interview maternal grandfather David, who was incarcerated, or Faith's paternal aunt, who appeared at the detention hearing. It also admits it interviewed but did not make any ICWA inquiries to maternal great-aunt Tracy S. and maternal great-uncles Wilbert and Robert. Indeed, no one from maternal grandfather's generation was interviewed about Indian ancestry.

The Department claims further inquiry of those relatives was unnecessary, however, because it had obtained from Stacy and Joyce all the information necessary to provide notice to the tribes each of them identified. The notices were sent, and the tribes responded. Nothing further was required, asserts the Department; or if it was, the error in failing to make further inquiry was plainly harmless. This argument fails because the notices on which it is predicated were neither accurate nor complete.

In the ICWA notice for Trust, for example, Joyce was identified as Trust's maternal great-grandfather, while Wilbert B. was listed as Trust's great-grandmother. (Those individuals are properly identified in the notice for Faith.) Evelyn and maternal grandfather David were identified in the notices with their birthdates and birthplaces; but no information was provided for either of Evelyn's parents, nor does the record indicate Evelyn, with whom Trust has been placed since his detention, had ever been asked about them.

David—the children's maternal grandfather—was not interviewed; and, although he was incarcerated and capable of

being found, his address was listed as "unknown." David's deceased father, maternal great-grandfather Wilbert B., was identified in the ICWA notice, but no information was included on his date and place of death. Either Joyce did not know that information or did not provide it; and neither David nor great-uncles Wilbert and Robert and great-aunt Tracy S. were asked, leaving the record without any indication whether they could have supplied additional detail for inclusion in the ICWA notices. Moreover, despite the mandate of section 224.2, subdivision (e)(2)(C), there is no suggestion in any of the Department's reports that it contacted the Bureau of Indian Affairs, the Department of the Interior, or the tribes (the Shawnee Tribe of Oklahoma and the Caddo Nation of Oklahoma) to determine whether the missing information was "necessary for the tribe to make a membership or eligibility determination."

The Department seemingly acknowledges these omissions but, citing cases that have identified a standard of prejudice with which we have repeatedly disagreed, emphasizes that Danesha has not demonstrated on appeal that further interviews would have supplied the missing information. (See *In re Dezi C.* (2022) 79 Cal.App.5th 769, review granted, Sept. 21, 2022, S275578; *In In re Ezequiel G.* (2022) 81 Cal.App.5th 984; *In re M.M.* (2022) 81 Cal.App.5th 61, 72, review granted Oct. 12, 2022, S276099.) This argument stubbornly ignores that the duty to develop the information necessary to provide proper notice rests with the court and the Department, not the parents or members of the parents' families. (*In re J.K.* (2022) 83 Cal.App.5th 498, 506; accord, *In re Rylei S., supra,* 81 Cal.App.5th at p. 317; *In re Antonio R., supra,* 76 Cal.App.5th at p. 430; *In re Benjamin M.*

(2021) 70 Cal.App.5th 735, 742; but see *Ezequiel G.,* at pp. 1013-1015.)

Emphasizing Joyce's large family of "six children, 16 grandchildren and 20 great-grandchildren," the Department complains it simply cannot be expected, despite the statutory mandate, to interview every extended family member and "interested person," including the reporting hospital worker or the nonrelated extended family member in whose care and custody Faith has been placed.[5] The Department's task may be difficult, but the language of section 224.2, subdivision (e), is clear: When there is reason to believe a child involved in dependency proceedings may be an Indian child, further inquiry of the statutorily defined, relevant individuals is required to obtain the information necessary to provide the requisite ICWA notice. If the inquiry of an individual is not made (and there may well be times when it is unnecessary) (see *In re Rylei S., supra,* 81 Cal.App.5th at p. 325 [suggesting examples]), the burden is on

---

[5] We might be more sympathetic to the Department's complaint about the enormity of the task of interviewing several dozen extended family members had it not failed to direct ICWA-related questions to many of the family members it actually interviewed and if it had not repeatedly included incomplete and inaccurate boilerplate descriptions of its ICWA efforts in its reports before the section 366.26 hearing. Had the juvenile court been properly advised that both children may have Indian ancestry through their maternal lineage, not just Faith through her father, the court may have directed the Department to conduct a proper inquiry, preventing the errors we identify and avoiding the delay in permanency for Faith and Trust that many of our colleagues cite as the basis for excusing the Department's recurring violations of its statutory obligations.

the Department to show further inquiry was unnecessary or would not have yielded the missing information. (*Ibid*.; see *In re Manzy W.* (1997) 14 Cal.4th 1199, 1209 [failure to comply with mandatory duty may be harmless error if the record affirmatively shows the protections intended to be afforded by the duty have been provided].) The Department does not contend it carried that burden, but rather that the burden is too onerous, and should be placed on Danesha. As discussed, we have repeatedly rejected that approach. (*Rylei S.,* at p. 317; *In re Antonio R., supra,* 76 Cal.App.5th at p. 430.)

The Department's suggestion that the ICWA issues have been forfeited because they were not raised in Danesha's prior appeal from the jurisdiction finding and disposition order is also without merit.[6] The duty of inquiry is a continuing one not subject to forfeiture by the parent's failure to raise it in a prior appeal (*In re Isaiah W., supra,* 1 Cal.5th at p. 15), particularly when, as here, the prior appeal was dismissed without a decision on the merits.

In sum, further inquiry is required in this case. On remand the juvenile court must promptly direct the Department to make a meaningful and thorough inquiry regarding Trust's and Faith's

---

[6] In her initial appeal from the disposition order, Danesha challenged the content of the ICWA notices for omitting other federally recognized Shawnee tribes. Danesha's counsel subsequently withdrew that argument and advised this court in writing that, after examination of the record, there were no arguable issues. (See generally *In re Phoenix H.* (2009) 47 Cal.4th 835.) Danesha did not respond to our invitation to file a brief on her own behalf. (*Id*. at pp. 844-845.) We dismissed her appeal.

possible Indian ancestry, including making all reasonable efforts to interview maternal grandfather David B., maternal great-uncles Robert and Wilbert, and maternal great-aunt Tracy S. In addition, the Department must make reasonable efforts to identify and thereafter to interview all extended family members and others who have an interest in the child regarding Trust's and Faith's possible Indian ancestry and contact the Shawnee Tribe of Oklahoma and the Caddo Nation of Oklahoma and/or any other tribes that may be identified during the inquiry as required by section 224.2, subdivision (e)(2)(C). If that information establishes a reason to know an Indian child is involved, notice in accordance with section 224.3 must be provided to any tribe that has been identified or, if the tribe cannot be identified, to the Bureau of Indian Affairs. The Department must thereafter notify the juvenile court of its actions and file certified mail return receipts for any ICWA notices that were sent, together with any responses received. The court must determine on the record whether the ICWA inquiry and notice requirements have been satisfied and whether Trust and Faith, or either of them, are Indian children. If the court finds an Indian child is involved in the proceedings, it is to vacate its order terminating parental rights and conduct a new section 366.26 hearing and all further hearings in compliance with ICWA and related California law. If not, the court's original order terminating parental rights may remain in effect.

## DISPOSITION

The February 4, 2022 order terminating parental rights is conditionally affirmed, and the matter is remanded for the court and the Department to comply with the mandatory and continuing duty of inquiry and notice provisions of ICWA and related California law and for further proceedings not inconsistent with this opinion.


                                    PERLUSS, P. J.


We concur:



        SEGAL, J.



        FEUER, J.